Charles V. O'Hern, Receiver of Peoria Life Insurance Company, Appellant, v. Clarence H. DeLong et al., Appellees.

Gen. No. 9,140.

CASSIDY & KNOBLOCK and GEORGE Z. BARNES, all of Peoria, for appellant.

ACTON, ACTON & BALDWIN, of Danville, for appellees; W. M. ACTON and HARVEY H. ACTON, of counsel.

MR. PRESIDING JUSTICE RIESS delivered the opinion of the court.

Plaintiff appellant, Charles V. O'Hern, receiver of the Peoria Life Insurance Company, a corporation, has appealed from a decree of the circuit court of Vermilion county denying relief prayed for in a mortgage foreclosure proceeding filed by the plaintiff against defendants Clarence H. DeLong and Lillian E. DeLong, his wife, and in granting defendants a set-off by way of counterclaim for the amount payable under the note and mortgage.

On February 6, 1928, said defendants gave their note and mortgage on certain real estate in Vermilion county, Illinois, to the Bank of Peoria, as security for a loan of $2,100, which securities were duly assigned to the Peoria Life Insurance Company by said bank on November 12, 1931, and the defendants had defaulted in payment of principal, interest, taxes and insurance due thereon since 1933.

On August 14, 1923, the above insurance company had entered into a written contract with C. B. DeLong and Clarence H. DeLong, copartners, to act as its agents in procuring applications for life insurance policies. Under the terms of section 2 of the contract, said agents were to receive as commissions, 60 per cent of the first year's premium and 7½ per cent commission from renewal premiums for the second to the tenth year inclusive ''if contract in force.'' Section 3 provided that ''Commissions shall accrue only as premiums are paid to first party, or the Company, in cash.'' Section 25 thereof provided that ''Unless otherwise terminated, this agreement may be terminated by either party by a notice in writing delivered personally, or mailed to the other party at the last known address, at least thirty days before the date therein fixed for such termination.'' Section 27 provided for renewal commissions after three years, as follows: ''If this Contract shall continue in force and second party shall perform all of its conditions and devote his entire time and act exclusively for said Company for a period of three years from the date said contract takes effect, and conforms to the rules of the Company during said three years, then the renewal commissions shall be paid to him subject to the limitations and stipulations herein contained for the full period as specified in paragraph number two hereof.''

The defendants continued to act as agents of the company and to procure applications for policies un-

der their contract until 1933, at which time about 500 policies were in effect, upon which said agents had regularly received 60 per cent of the first year's premiums and $7\frac{1}{2}$ per cent of all renewal premiums collected thereunder.

On November 15, 1933, a bill in chancery was filed in the circuit court of Peoria county by Ernest Palmer, director of insurance of the State of Illinois, for the purpose of liquidating and winding up the affairs of said company on the alleged ground of its insolvency under the Liquidation Act of 1925, in which proceeding a decree was entered finding the company to be insolvent and ordering liquidation of its assets. The director of insurance appointed the plaintiff herein as receiver, pursuant to the provisions of the Illinois statutes, and the assets of the company, including the above note and mortgage, passed into the hands of the receiver.

After default in payment by said defendants, the receiver filed its foreclosure suit against the defendants in the circuit court of Vermilion county on December 31, 1934.

Defendants filed an answer admitting the execution and delivery of the note and mortgage, but denying all right of recovery, and filed therewith their counterclaim setting forth the agency contract in question and alleging that by virtue of the receivership and insolvency of the company, there was a termination of the contract contrary to an implied condition that the company would continue in business, whereby the said agents would have collected commission on renewal premiums so alleged to be due in an amended counterclaim, in excess of the amount payable to the company on the note and mortgage; that the future commissions of said agents had been duly assigned to defendant Clarence H. DeLong and that such receivership and insolvency constituted an anticipatory breach of said

implied obligation under the contract, whereby the defendants had sustained damages and were entitled, in equity, to have the same set off to the full amount of the mortgage indebtedness, as a vested right of the defendant under the terms of said contract.

Plaintiff filed a motion to dismiss the counterclaim, which was denied, and then filed its answer thereto admitting execution of the agency contract and such insolvency and that it had ceased to do insurance business on November 15, 1933, when said receiver was appointed for the purpose of liquidating the insolvent company, but denying defendants right to relief prayed.

The court heard the cause; held that there was such implied obligation on the part of the company; that it remained insolvent and did not carry out the contract for payment of said commission on renewal premiums; that there was an anticipatory breach of said obligation under the agency contract, whereby the defendants, under their counterclaim, had been damaged in an amount in excess of the $3,053.45 due on the note and mortgage; that defendants had no adequate remedy at law by reason of such insolvency and liquidation proceedings. The set-off was allowed and the note and mortgage decreed to have been satisfied and ordered canceled of record.

Oral testimony was also offered by defendant Clarence H. DeLong stating in substance that when the contract was entered into, he did so under the belief that the company would not become insolvent, but would continue in business until such renewal premiums were fully paid and that such belief in the stability and permanence of the company was induced by representations of the superintendent of agents of the company at the time the contract was entered into.

No cases involving similar issues and facts appear to have been passed upon by the courts of review in

the State of Illinois and but few in other States. However, the issues in controversy under a similar state of facts were directly passed upon in the case of *Hepburn v. Montgomery*, 97 N. Y. 617, from which we quote as follows: "Appeals from orders and judgments of the Supreme Court, at General Term, in the fourth department, in three actions brought by plaintiff, as receiver of the Continental Life Insurance Company. . . . Actions numbers one and two were to foreclose mortgages, executed by defendant Montgomery and wife. In these he interposed a counter-claim consisting of an alleged indebtedness of the company to him as its agent for commissions in pursuance of an agreement with the company. As to this the court says: 'We are of opinion that the counter-claim in actions numbers one and two fall within the principal of the cases of *People v. Globe Mutual Life Insurance Co.* (91 N. Y. 174) and *Attorney General v. Continental Life Insurance Co., In re claim of Jewell* (93 id. 630), that the agreement of the company to pay commissions on renewals was impliedly conditioned upon the continued existence of the company and its ability to renew policies and receive premiums thereon, and was terminated by its dissolution; that the right and power of the company to receive premiums having been destroyed by the lawful action of the officers of the State, no commissions on such premiums could thereafter become due to the defendant Montgomery, and consequently his right to elect to commute for a gross sum for commissions to become due terminated, and the obligation of the company to pay either the commissions, or a gross sum in lieu thereof, ceased.' "

In the case of *People v. Globe Mut. Life Ins. Co.*, *supra,* it was held that where the company had been restrained by an order of the court from further prosecuting its business and a receiver was appointed, a contract entered into by the company with a general

agent for his services for a specified term is thereby annulled by the action of the State, and he has no cause of action for nonperformance by the company thereafter; that "what had happened was a dissolution of the contract by the sovereign power of the State, rendering performance on either side impossible. And this result was within the contemplation of the parties, and must be deemed an unexpressed condition of their agreement."

The same principle was announced and adhered to in the case of *Layton v. Illinois Life Ins. Co.*, claim of George F. Bachman, 81 F. (2d) 600. The court, concerning the issues therein, stated that "The single, ultimate question to be determined upon this appeal is whether a life insurance agent under a contract for post-agency renewal commissions is entitled, upon receivership of the life insurance company, and its consequent inability to continue in business, to recover the 'present value' of such commissions upon renewal premiums which it is alleged the company, had it continued in business, would have received in due course."

There, appellant Bachman had entered into an agency contract with the Illinois Life Insurance Company on September 1, 1919, and continued as its agent until the appointment of a receiver by the United States District Court on November 29, 1932. The contract there, as here, contained numerous provisions and turned upon the construction of portions of the contract, which provided for the payment of commission on the cash premiums for the first year and of commission on renewal premiums so paid upon the second and subsequent years' premiums at rates specified therein. It also contained certain provisions of similar import to the contract herein relative to payment of the renewal commissions to the agent's representatives in case of death. The claim for commissions on future renewal premiums was denied and the appeal fol-

lowed. The contract there, as here, was for no definite term and could be terminated at any time by notice of either party, and the court held that it was, in effect, terminated by the receivership of the company. The appellant contended that the provisions of the agency contract for postagency commissions was not terminable at the will of the principal and had been breached by the appointment of the receiver and consequent inability of the company to perform. Appellee therein contended that such termination was by operation of law and was within the contemplation of the contracting parties and cannot in any event be made a basis of liability.

In passing upon the issues, the court said: "A similar question was before the Court of Appeals of the Eighth Circuit in the case of *Moore v. Security Trust & Life Insurance Company,* 168 F. 496, 499. The only important factual difference in that case was that the insurance company had voluntarily incapacitated itself from further continuance in the life insurance business by conveying all its assets to another company. The court there held that such conduct on the part of the company did not constitute an anticipatory breach of an agreement with its agent that would sustain an action by the agent for the present worth of future commissions. . . . Section 28 of the contract must be read in connection with section 21 which obligates the company to pay a commission on renewal premiums 'which shall . . . be obtained, collected, paid to and received by said first party, in cash. . . .' A proper construction of the contract requires that this condition be likewise read into section 28 which deals with appellant's rights upon termination of the agency; indeed, express reference is made in section 28 to the conditions of section 21. The contract having been terminated by operation of law, this condition was likewise incapable of fruition. The appellant's right

to commissions on future premiums being at all times a prospective right and contingent upon payment being made by the holders of the contracts of insurance—contingent both before and after 'due termination' of the contract—it must follow that this condition was within the contemplation of the contracting parties and the burden of failure of realization must fall alike upon them,''

In that case, it was held that a life insurance agency contract which was for no definite term and which provided for postagency renewal commission on premiums which should be collected by the insurer, the agent of the insurer, during receivership, was not entitled to recover ''the present value'' of commission on renewal premiums which the insurer would have received in due course thereafter had it continued in business, since the condition of commissions being contingent on premiums being paid, was within the contemplation of the parties.

It was there further said that ''The very nature of the agency contract impels the conclusion that it must have been within the contemplation of the contracting parties that the company might some day become incapacitated from continuing in the insurance business. When the district court assumed jurisdiction over the affairs of the company and appointed a receiver, we think this amounted to a termination of the contract by operation of law reasonably within the contemplation of the parties and not an actionable breach on the part of the company.''

The court then distinguished the Chicago Auditorium Association case cited by the defendant appellees herein in the following language: ''The situation here is to be distinguished from that in the case of *Central Trust Company of Illinois v. Chicago Auditorium Association,* 240 U. S. 581, 36 S. Ct. 412, 416, 60 L. Ed. 811, LRA 1917B, 580, where the court, in

holding that bankruptcy created a breach of the con-
tract there under consideration, said that 'the obliga-
tion of the bankrupt was clear and unconditional.' The
contract here abounds in contingencies. Appellant
very earnestly contends that the company, having be-
come incapacitated from further continuance of its
contract with him, a right has accrued to him to claim
damages on account of such disenablement. The fal-
lacy of his position lies in his assumption that such
right is absolute, whereas in fact it is prospective and
contingent. The contingency has not happened and,
by force of the receivership, cannot happen and his
prospective right can never ripen into an absolute
right.''

The court then concluded as follows: ''We think it
cannot be said that the company engaged itself uncon-
ditionally to remain in business for any given period
and thus be in a position to receive the renewal premi-
ums. The continued solvency of the company and its
continued ability to collect and receive future premi-
ums from those insured was one of the contingencies
to be accepted alike by the agent and the company
and, therefore, within the reasonable contemplation of
the parties. The success or failure of the company
was of like importance to the agent and the company.
. . . We think a fair construction of the contract as
a whole indicates clearly that the right to renewal
commissions is conditioned on the continued existence
of the company and the continued collection of premi-
ums. . . . The order is affirmed.''

The courts of review of Illinois have generally recog-
nized the rule of construction that in contracts, the
performance of which requires the continued existence
of a particular person or a particular thing, a condi-
tion is always implied that the death of such person
or the destruction of such thing shall excuse perform-
ance. (*Martin Emerich Outfitting Co. v. Siegel, Cooper
& Co.*, 237 Ill. 610, 86 N. E. 1104; *Siegel, Cooper & Co.*

*v. Eaton & Prince Co.,* 165 Ill. 550, 46 N. E. 449; *Walker v. Tucker,* 70 Ill. 527; *White v. White,* 274 Ill. App. 531; 13 C. J. 642, 643.) In the case of *Martin Emerich O. Co. v. Siegel, Cooper & Co.,* 141 Ill. App. 147, 159 (affirmed supra) quoting from *Taylor v. Caldwell,* 3 Best & Smith, 826, it is said "Where from the nature of the contract it appears that the parties must from the beginning have known that it could not be fulfilled unless, when the time for fulfillment arrived, some particular specified thing continued to exist, so that, when entering into the contract, they must have contemplated such continuing existence as the foundation of what was to be done, then, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible from the perishing of the thing without the default of the contractor."

The oral statements of the defendant as to what the parties contemplated cannot alter nor overcome the express provisions of the written contract, when the intention of the parties can be gathered from the language of the instrument and all of its provisions when construed together and given meaning, as they must be, with all necessary implications arising therefrom.

We hold that the principles announced in the above cases are applicable to and controlling under the facts and issues herein and that the trial court erred in granting the relief prayed in the counterclaim and in failing to dismiss the same. The plaintiff was entitled to the relief prayed in its original bill of complaint.

The decree of the circuit court of Vermilion county is therefore reversed and the cause remanded with directions to proceed and to enter decretal orders in conformity with the holdings herein.

*Reversed and remanded with directions.*