People of the State of Illinois ex rel. Ernest Palmer  v. Peoria Life Insurance Company.
In re Claims of Margaret Harwick et al., Appellants, v. Charles V. O'Hern, as Receiver of Peoria Life Insurance Company and Alliance Life Insurance Company, Appellees.

Gen. No. 9,403.

October term, 1938. Heard in this court at the Opinion filed February 17, 1940.

HARRY E. BROWN, of Geneseo, SHURTLEFF & NIEHAUS, MILLER, ELLIOTT & WESTERVELT and GEORGE JOCHEM, all of Peoria, and CHARLES F. WELSH, of Detroit, Mich., for appellants; DONALD G. BESTE, of Peoria, of counsel.

CASSIDY & KNOBLOCK, of Peoria, for certain appellee; JOHN E. CASSIDY, of Peoria, and JOHN F. SLOAN, JR., of counsel.

D. I. JARRETT, of Chicago, GEORGE Z. BARNES and GEORGE W. HUNT, both of Peoria, for certain other appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

On November 15, 1933, the People of the State of Illinois, upon the relation of Ernest Palmer, director of insurance, by the Attorney General filed a verified complaint in the circuit court of Peoria county for the purpose of liquidating the Peoria Life Insurance Company, which was alleged to be insolvent. The defendant Life Insurance Company entered its appearance in that proceeding and a decree was rendered finding that the capital stock of defendant was wholly impaired, that sufficient cause existed for the appointment of a receiver and provided that when the receiver was appointed he should immediately take possession of the books, records and affairs of the company and proceed to liquidate the same. The decree fixed the amount of the bond and on the same day the director of insurance appointed Charles D. O'Hern

receiver, who qualified, and the assets of the company passed into his hands. On November 18, 1933, the court entered an order authorizing the receiver to accept all premiums tendered by policyholders, giving his receipt therefor and to hold such premiums subject to the further order of this court. In 1934 a reinsurance contract was entered into by the receiver, acting under the directions of and with the approval of the court and the Life and Casualty Company of Chicago, an Illinois Corporation. This company thereafter changed its name to Alliance Life Insurance Company and will hereafter be referred to as the Alliance Company. The court in its decree relative to this contract found that it was in accord with the plan of liquidation adopted by the receiver pursuant to the statute and concurred in by the director of insurance and that it was for the best interest of all concerned or interested in the assets of the Peoria Life Insurance Company that it be executed and made effective. By this decree the court further found that the then value of the assets of the Peoria Life Insurance Company upon any fair basis of valuation was wholly insufficient to meet its liabilities and the contract of reinsurance had to do with only assenting policyholders and dealt with no other contract or obligation of the insolvent company. This decree, which was entered on August 22, 1934, provided: "That all contracts, written or oral, entered into by the Peoria Life Insurance Company for the services of persons to act as agents, managers or supervisors, or to sell contracts of insurance or collect premiums thereon due to the Peoria Life Insurance Company be, and the same are, and each of them is hereby disaffirmed as of November 15, 1933, the date of the entry of the order of liquidation in the above entitled cause and the date of the appointment of the receiver."

Thereafter the Alliance Company filed its claim with the receiver for the amount of all claims assigned to it by assenting policyholders as provided in the rein-

surance contract and the decree approving the same. Claims were also filed with the receiver by Margaret Harwick, as assignee of Hugh E. Van DeWalker, Fidelity and Deposit Company, assignee of George C. Berra, T. A. Curnow, Thomas E. Rogers, Edwin B. Seidel, C. H. DeLong and W. H. Logan. These claimants or their assignors were former insurance agents of the Peoria Life Insurance Company and their claims are based upon contracts which they had with that company by the terms of which they were to be paid commissions upon insurance business written by them, including commissions on renewal premiums ranging from the second to the fifteenth year of the life of the policy. The object of the claimants being, as expressed by their counsel, to recover renewal commissions accruing after November 15, 1933, the date of the receivership, on insurance business written by the agents prior to that date. Each claimant also, by leave of court, filed an additional claim against the Alliance Company, claiming that they were equitably entitled to recover from it commissions on premiums paid to the Alliance Company after November 15, 1933, by assenting policyholders covered by their respective commission contracts with the defunct Peoria Life Insurance Company.

The claims were consolidated for hearing in the lower court. At the conclusion of the hearing an order was entered confirming the receiver's disallowance of each claim and dismissing each claim against the receiver of the Peoria Life Insurance Company for want of equity. Subsequently an order and decree was entered denying each claim as against the Alliance Life Insurance Company. From these orders and decrees the claimants appealed to the Supreme Court on the ground that the appeals involved constructions of the constitutions of the United States and of this State and that the public interest required an appeal directly to that court. The Supreme Court transferred the cause to this court without opinion.

The contracts upon which the several claimants rely were agency commission contracts executed by the claimants or their assignors and the Peoria Life Insurance Company on various dates between 1914 and 1929. These contracts are not identical and while they varied somewhat in their terms, it is not necessary to point out the dissimilarities. All provided that the party with whom the contract was made should solicit applications for life insurance and pay over to the Insurance Company all premiums which he collects, that he would be allowed commissions on premiums paid the company, on policies issued under the contract according to certain schedules attached to the contract, that the commissions would accrue as premiums are paid to the company in cash, that if any policy remains unpaid after 30 days of grace and is subsequently restored, except wholly through the instrumentality of the agent, the company is discharged from any liability to the agent for compensation on account of such policy, that unless otherwise terminated the agreement may be terminated by either party by 30 days' written notice and if the contract remains in force and the agent performs all the conditions thereof and devotes his entire time to the company for a period of three years from the effective date of the contract, then renewal commissions shall be paid for the full period as specified in the attached schedule.

It is the contention of counsel for appellants that appellants have a vested property right in all the renewal premiums paid either to the receiver or to the Alliance Company up to the amount of the renewal commissions provided in their contracts and it is insisted that the evidence discloses that there has been no interruption in the payment of the premiums by the policyholders whose policies have been taken over and assumed by the Alliance Company, that the premiums paid are in like amounts to the payments made prior to receivership and that a portion of that premium

represents renewal commissions to which appellants are entitled under their several contracts with the Peoria Life Insurance Company.

It is the contention of appellees that the several contracts of the claimants with the Peoria Life Insurance Company were terminated by the decree of liquidation rendered on November 15, 1933, that each contract provided that appellants were only entitled to commissions on premiums when those premiums were paid to the Peoria Life Insurance Company in cash, that the renewal premiums, when paid after November 15, 1933, were not paid to the Peoria Life Insurance Company but were paid either to the receiver thereof or to the Alliance Company and are not assets for the benefit of the creditors of the Peoria Life Insurance Company nor are they burdened with any lien or equity in favor of appellants.

In *O'Hern v. DeLong*, 298 Ill. App. 375, it appeared that appellant herein, DeLong, had on February 6, 1928, executed his note for $2,100, secured by a mortgage to the Bank of Peoria and by that bank assigned, on November 12, 1931, to the Peoria Life Insurance Company. This note and mortgage came into the hands of O'Hern upon his appointment as receiver for the company on November 15, 1933. Default having been made in the payment of principal, interest, taxes and insurance, the receiver, on December 31, 1934, filed his complaint in the circuit court of Vermilion county to foreclose the same. In that proceeding DeLong filed his answer admitting the execution of the note and mortgage but denying all right of recovery and filed an amended counterclaim setting forth his agency contract (which forms the basis for his recovery in the instant proceeding), and alleging that by virtue of the insolvency of the company, there was a termination of his contract contrary to an implied condition that the company would continue in business and the agent would have collected commission on re-

newal premiums in excess of the amount due the receiver upon the note and mortgage sought to be foreclosed. By his counterclaim he insisted that such insolvency constituted an anticipatory breach of said implied condition and the defendant was entitled to set off the damages he thus sustained as a vested right under the terms of his contract with the company. The chancellor held that there was an anticipatory breach by the company of said obligation under the agency contract, allowed the set-off and decreed the mortgage satisfied. In reversing that decree and directing the lower court to dismiss the counterclaim, and render a decree of foreclosure upon the original complaint, the court, in its opinion, cited and quoted at length from *Hepburn v. Montgomery,* 97 N. Y. 617; *People v. Globe Mut. Life Ins. Co.,* 91 N. Y. 174; *Layton v. Illinois Life Ins. Co.,* 81 F. (2d) 600 and *Martin Emerich Outfitting Co. v. Siegel, Cooper & Co.,* 141 Ill. App. 147, affirmed in 237 Ill. 610 and held in effect that this agency contract was subject to an implied condition that the company would be relieved from paying commission on renewal premiums where performance becomes impossible by reason of its insolvency and destruction. See Annotation, 79 A. L. R. 475.

The record in the instant case discloses that five of the agents' contracts were terminated prior to the date of the receivership and only two were in effect on November 15, 1933, the date O'Hern was appointed receiver. Counsel for appellants concede that by the receivership proceedings these two contracts were terminated in the sense that the agents could no longer sell insurance for the Peoria Life Insurance Company and could have no claim for damages by reason of the loss of the right to so act as agents, but insist that the receivership could not deprive the agents of moneys already earned before receivership or absolve the Alliance Company inasmuch as it was *de facto* successor of the Peoria Life Insurance Company. Counsel

argue that the Peoria Life Insurance Company receivership started out as a simple liquidation but that by the efforts of the receiver in getting the various assenting policyholders reinsured in the Alliance Company, the nature of the receivership proceedings was thereby changed from a liquidation proceeding to a reorganization proceeding.

*General American Life Ins. Co. v. Roach,* 179 Okla. 301, 65 P. (2d) 458, is the controlling decision, so counsel for appellants assert, upon which they rely in support of their contention that appellee, the Alliance Company, is successor to the Peoria Life Insurance Company and therefore obligated to appellants by virtue of the provisions of their several contracts. It appeared in the *Roach* case that the International Life Insurance Company had made a contract with Kellie M. Roach in 1913 by the terms of which he became State manager for the State of Oklahoma and in addition to receiving certain monthly payments and a specified percentage of the first annual premium on insurance sold by him, he was also to receive a percentage of the renewal premiums. In 1928, the International Life Insurance Company transferred all its assets, contracts and choses in action to Missouri State Life Insurance Company, which recognized and fully complied with International Company's contract with Roach and paid to him or his assignee the agreed share of the renewal premiums. In 1933, Missouri State Life Insurance Company became insolvent and the Insurance Commissioner of the State of Missouri took charge of the company under the laws of that State. A few days later said insurance commissioner approved a contract between the Missouri State Life Insurance Company and the General American Life Insurance Company, by which that company became the owner of all the assets, property, contracts and choses in action of the Missouri State Life Insurance Company and further assumed all the obligations of

the Missouri State Life Insurance Company, including its indebtedness to policyholders, agents and other creditors to the extent of 50 per cent thereof. The suit was instituted by the assignee of the Roach contract, whom the court stated occupied in every respect the legal position of Roach and was brought to recover from the General American Life Insurance Company 5 per cent of the renewal premiums collected by it under the contract which Roach had originally entered into with the International Life Insurance Company. The defendant recognized the binding effect of the Roach contract for the payment of a percentage of the renewal premiums but contended that such contract was modified by the provisions of its contract with the Missouri State Life Insurance Company limiting its obligation to pay the creditors of that company only 50 per cent of their claims. The court held that Roach's right to receive 5 per cent of the renewal premiums under his agency contract became fixed as soon as the policy was taken out, that this right was his property and existed as long as the policy continued in force and that when payment was made to the collecting company, the right of the agent to receive the same attached simultaneously with the collection, that due to the contractual relations between the parties, the International Life Insurance Company and its successors, including the defendant, stood in a trust capacity toward Roach, the agent. In the instant case, the reinsurance contract which the court approved does not provide that Alliance Company assumed all the indebtedness due or to become due appellants nor did Alliance Company acquire every asset of Peoria Life. In the instant case the reinsurance contract was made by the receiver of Peoria Life not with that company itself. In the *Roach* case the General American Life Insurance Company became the successor to the Missouri State Life Insurance Company and purchased all of its assets and assumed its liabilities subject to certain attempted limitations. Not so here. We do not think Alliance

Company is the successor of the Peoria Life Insurance Company in the sense that the General American Life Insurance Company was the successor of the Missouri State Life Insurance Company nor do we think it is the successor of the Peoria Life in the sense insisted upon by appellants. The reinsurance contract here was made in an effort upon the part of the receiver to liquidate that company under the directions of the court and pursuant to the statute and was a step only in the liquidation proceedings and while Alliance Company by that contract incurred some of the liabilities of Peoria Life, the claims which appellants are here endeavoring to assert against it were not among those liabilities.

In *Layton v. Illinois Life Ins. Co., supra,* it appeared that George F. Bachman had entered into an agency contract with the Illinois Life Insurance Company on September 1, 1919, and continued as an agent of the company until the appointment of General Abel Davis as receiver for that company on November 29, 1932. Bachman filed his claim in the receivership proceedings contending that his contract providing for post-agency commissions had been breached by the appointment of a receiver and the consequent inability of the company to perform. The district court denied the claim and the circuit court of appeals in affirming that order cited with approval *Moore v. Security Trust & Life Ins. Co.,* 168 Fed. 496, where it appeared that the Insurance Company had voluntarily incapacitated itself from a further continuance of the life insurance business by conveying all its assets to another company and where it was held that such conduct on the part of the company did not constitute an anticipatory breach of an agreement with its agent that would sustain an action by the agent to recover the present worth of future commissions. The court also cited *Pellet v. Manufacturers' & Merchants' Ins. Co. of Pittsburg,* 104 Fed. 502, where it was held that the discontinuance of business by an insurance company in

no way breaches an agency contract. In the *Layton* case the agency contract obligated the company to pay to the agent a commission on renewal premiums which were collected, paid to and received in cash by the company. In construing the contract, the court said that the agent's right to commissions on future premiums was a prospective right and contingent upon payment being made by the policyholders and was a condition within the contemplation of the contracting parties. "The very nature of the agency contract," continues the court in its opinion, "impels the conclusion that it must have been within the contemplation of the contracting parties that the company might some day become incapacitated from continuing in the insurance business. When the district court assumed jurisdiction over the affairs of the company and appointed a receiver, we think this amounted to a termination of the contract by operation of law reasonably within the contemplation of the parties and not an actionable breach on the part of the company. . . . The continued solvency of the company and its continued ability to collect and receive future premiums from those insured was one of the contingencies to be accepted alike by the agent and the company and therefore within the reasonable contemplation of the parties. The success or failure of the company was of like importance to the agent and the company. . . . We think a fair construction of the contract as a whole indicates clearly that the right to renewal commissions is conditioned on the continued existence of the company and the continued collection of premiums." Counsel for appellants insist that in the *Layton* case it appeared there was a true liquidation while here there is a reorganization inasmuch as all the assenting policyholders were reinsured and not a liquidation of the Peoria Life. An examination of *Daniel v. Layton,* 75 F. (2d) 135 and *Ballou v. Davis,* 75 F. (2d) 138, disclose that a reinsurance contract was entered into by the receiver of the Illinois Life Insurance Company with the Central Life

Assurance Society of Iowa as a step in the liquidation proceedings of the Illinois Life Insurance Company and there, as here, the contract of reinsurance permitted but did not require, policyholders to accept the terms of the reinsurance contract.

In *People ex rel. Lowe v. Old Colony Life Ins. Company,* 270 Ill. App. 403, the court, in speaking of an order of the circuit court which directed the receivers of the Old Colony Life Insurance Company to accept a reinsurance proposal of the Life and Casualty Company of Chicago, said: ''The sole purpose of the order was to carry out the liquidation of the defendant insurance company. *Walrath v. Pyplatz,* 178 Ill. App. 581. The reinsurance of the policies was for the benefit of the holders and a step to protect the policyholders in the liquidation of the company.'' So in the instant case this reinsurance agreement is simply a step in the liquidation of the assets of the Peoria Life Insurance Company and as said in *Ballou v. Davis, supra,* a highly commendable method of handling the affairs of a financially embarrassed, insolvent insurance company.

Counsel for appellant also insist that by the provisions of the reinsurance contract the Alliance Company is more than a reinsurer inasmuch as it took over all the business of the Peoria Life Insurance Company and therefore it assumed all the burdens inseparable from that business; that for all practical purposes the Alliance Company stands in the place of the former company and that therefore it, the Alliance Company, is liable for commissions to former agents whose efforts created a large portion of the insurance business of the Peoria Life which is now enjoyed by the Alliance Company. There is no merit in this contention. The reinsurance agreement entered into by the receiver and the Alliance Company is long and involved and covers many finely printed pages of the abstract, but an analysis of that contract does not warrant the conclusions insisted upon by counsel. By that

contract the Alliance Company did make an offer of a definite insurance contract to each policyholder of the Peoria Life Insurance Company and each policyholder either accepted or rejected that offer. None of its provisions obligates the Alliance Company to pay appellants for any services they may have rendered their former employer, the Peoria Life. The conclusion reached by the Appellate Court of the Third District in the case of *O'Hern v. DeLong, supra,* and its construction of this agency contract meets with our approval as does also the reasoning in *Layton v. Illinois Life Ins. Co., supra,* and the claims of appellants were properly denied by the chancellor and the decrees and orders appealed from will therefore be affirmed.

We have not overlooked appellants' suggestion that the chancellor erred in denying their motion for a continuance on December 1, 1937. The record discloses that these claims had been pending for many months, evidence had been taken at various times and on November 17, 1937, the court set the cause for final hearing for December 1, 1937. The witnesses whom appellants desired to examine were the president and secretary of the Alliance Company. Subpoenas for these witnesses had been issued a week before December 1, 1937, but had not been served as these parties were out of the State for a portion of the time after the subpoenas had been issued. Counsel say they desired to examine these witnesses with reference to the transactions between the Alliance Company and the receiver in connection with carrying out the reinsurance agreement. There is nothing suggested which could be considered by this court as material to the issues herein. The chancellor, therefore, did not err in refusing to continue the hearing.

The decrees and orders appealed from will be affirmed.

*Decrees and orders affirmed.*