**Gordon WEAR, Appellant,**

v.

**FARMERS AND MERCHANTS BANK
OF LAS CRUCES, New
Mexico, Appellee.**

No. 3850.

Supreme Court of Alaska.

Jan. 11, 1980.

Rehearing Granted Feb. 29, 1980.
See 606 P.2d 1278.

Millard F. Ingraham, Rice, Hoppner,
Hedland, Fleischer & Ingraham, Fairbanks,
for appellant.

Andrew J. Kleinfeld, Fairbanks, for appellee.

Before CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

### ·OPINION

DIMOND, Senior Justice.

This is an action on a promissory note. The note, made in 1968, is held by the Farmers and Merchants Bank of Las Cruces, New Mexico; its maker is Gordon Wear. The bank sued Wear in 1974 for the unpaid balance of the note, $65,842.70, plus interest, costs and attorney's fees. Wear denied liability, but was found liable after a trial by the court without a jury in April, 1977. Judgment was entered for the bank on December 7, 1977, in the amount of $131,258.80.[1]

In 1968, Wear was an agent for the Century Life Insurance Company (hereinafter "Century"), a Texas company, and had been since 1952. He was not paid a regular salary. Instead, Century agents were financed by Century's advancing to them commissions from sales of policies on which the premiums had not yet been paid. In return the agents signed promissory notes to Century, and assigned as collateral for the notes commissions on future premiums. On November 21, 1968, Wear executed the promissory note at issue here to Century for $87,460.73, plus seven per cent interest. Century, on December 26, transferred this note to Century Life Investment Corporation, a wholly-owned subsidiary, which in turn sold it to the plaintiff bank on the following day. The bank paid Century Life Investment the face value of the note.[2]

Wear did not make direct payments to the bank. Rather, Century made lump-sum payments to the bank, and the bank in turn credited the Century agents with the monthly payments due on their notes. The bank's record of payments shows that Wear's note was paid in this manner through July, 1969.

In that month Century was placed in receivership under the Texas Department of Insurance. On October 1 the receiver sold Century's assets, including the insurance policies in force, to National Old Line Life Insurance Company of Arkansas. Century's agents were paid or credited for deferred commissions and service fees due them through September, 1969, but not for any commissions or fees becoming due after the sale to Old Line. Century agents who signed on with Old Line continued to receive their commissions and fees, but Old Line did not attempt to hire Wear, nor did Wear approach Old Line. At the time of Century's sale to Old Line, the value of the deferred commissions and service fees that Wear would have been owed in the future was about double his indebtedness on the note.

The bank received no payments after July from Wear, the receiver or anyone else. Therefore, on January 22, 1970, the bank notified Wear for the first time that it was the owner of his note, that he was behind in his payments almost $14,700, and that the note would be accelerated if he did not at once remit that sum. Six months later, on July 20, the bank credited Wear with one final payment of $10,382.[3] It has formally considered the note to be in default, and hence subject to ten per cent interest, since that date. After this final payment, the balance due on the note was $65,842.70. In September, 1970, a Texas court approved an agreement between the bank and the receiver wherein the bank agreed to pursue the agents personally on their notes and not go against Century's assets.[4]

---

1. This sum represented $65,842.70 as the principal of the note, $52,227.49 as interest, $531.60 in costs and $12,657.01 in attorney's fees.

2. The bank purchased 27 agent notes at this time, of which Wear's was by far the largest.

3. This sum credited to Wear's note was the prorated share of approximately $32,000 that

Century had on deposit with the bank at the time of its collapse, and which the bank, on advice of its counsel, decided to apply to the agents' notes in July, 1970.

4. The bank entered into this agreement in order to gain priority creditor status on other, more substantial, claims it had against Century.

In defending the bank's suit against him, Wear argued that he had the right to set off against the bank's claim the value of deferred commissions which he had earned from the sale of Century policies and which would have been used to make the monthly payments on his note. The superior court rejected this defense, ruling that Wear's personal liability on the note precluded it. We find that the defense was valid, and hence reverse.

█ Before we can examine the validity of Wear's defense, however, we must examine the bank's contention that, under Texas law, it was a holder in due course of Wear's note. If the bank occupied that status, it must prevail here, since a holder in due course of a negotiable instrument, such as a promissory note "takes the instrument free from . . . all defenses of any party to the instrument with whom the holder has not dealt . . . ."[5]

One must first become a holder of an instrument, such as a promissory note, before one may occupy the status of a holder in due course.[6] One does not become a holder, within the meaning of the Uniform Commercial Code, unless there has been an effective negotiation of the instrument.[7] In order to have effective negotiation, it is necessary, if the instrument is payable to order as Wear's note is,[8] that there be the necessary endorsement.[9] In this case that would be the endorsement of Century Life Insurance Company, since Wear's note was made payable to the order of Century. Finally, in order for Century's endorsement to be effective, it "must be written . . . on the instrument [the promissory note here] or on a paper so firmly affixed . . . thereto as to become a part of the instrument."[10]

In this case there was a transfer, assignment and conveyance of Wear's note from Century to its wholly-owned subsidiary, Century Life Investment Corporation. But this assignment purported to transfer to Century Life Investment only the "certain note or notes *described* in Exhibit A attached hereto." (Emphasis added.) Exhibit A (Plaintiff's Exhibit 3) described Wear's note, but the actual note was not endorsed to Century Life Investment, nor was it so firmly affixed to the assignment that the assignment became a part of the note. In fact, the actual note was not attached to

**5.** Tex.Bus. & Com.Code Ann. § 3.305 (Vernon), which is identical to U.C.C. § 3–305, provides, in relevant part:

   *Rights of a Holder in Due Course.* To the extent that a holder is a holder in due course he takes the instrument free from

   (a) All claims to it on the part of any person; and

   (b) all defenses of any party to the instrument with whom the holder has not dealt . . . .

**6.** Tex.Bus. & Com.Code Ann. § 3.302 (U.C.C. § 3–302) provides, in pertinent part:

   *Holder in Due Course.* (a) A holder in due course is a *holder* who takes the instrument

   (1) for value; and

   (2) in good faith; and

   (3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person. [Emphasis added.]

   *See* Anderson, Uniform Commercial Code § 1–201:65 at 106–07 (1970).

**7.** Tex.Bus. & Com.Code Ann. § 3.202 (U.C.C. § 3–202) provides in relevant part:

   *Negotiation.* (a) Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery. The official comment to this section of the Uniform Commercial Code states:

   Negotiation is merely a special form of transfer, the importance of which lies entirely in the fact that it makes the transferee a holder as defined in section 1–201. This section provides: " 'holder' means a person who is in possession of a document of title or an instrument or an investment security drawn, issued, *or endorsed to him* or to his order or to bearer or in blank." [Emphasis added.]

**8.** Wear's note is payable to the order of Century Life Insurance Company.

**9.** *See* note 7 *supra.*

**10.** Tex.Bus. & Com.Code Ann. § 3.202(b) (U.C.C. § 3–202(2)) provides:

   (b) An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed to the instrument thereto as to become a part thereof.

the assignment at all. What was attached was merely a description of the note and a statement that Wear had collaterally assigned to Century his deferred commissions on insurance policies that he had written to apply to the monthly payment due on the note. In these circumstances, Century Life Investment did not become either a holder or a holder in due course of Wear's promissory note made payable to the order of Century Life Insurance.

On the day following the transfer and assignment from Century Life Insurance Company to Century Life Investment Corporation, the latter executed an instrument transferring and delivering to the Farmers and Merchants Bank of Las Cruces, New Mexico:

> those 27 certain promissory notes described in Exhibit I attached hereto and made a part hereof, and all of the right, title and interest of the undersigned in each respective collateral agreement to which reference is made in the description of each note contained in said Exhibit I.

Wear's note was included with the 27 notes thus transferred and delivered to the bank. In this instance, although the record is not entirely clear on this part, it appears that the notes themselves were so firmly affixed to the written transfer that the latter instrument could be characterized as a proper endorsement of the notes. But this did not make the bank a holder in due course of Wear's note. The reason is that Texas Business & Commercial Code Ann. § 3.201 (U.C.C. § 3–201) provides that a "[t]ransfer of an instrument vests in the transferee such rights as the transferor has therein . . .." The transferor here was Century Life Investment, and since it was not a holder in due course, it could not create that status in its transferee, the bank. The rights that Century Life Investment had in Wear's note were those of a mere assignee only, and these rights of an assignee were all that could be vested in the bank. The bank was not a holder in due course of Wear's promissory note.

One not a holder in due course takes the instrument "subject to . . . all defenses of any party which would be available in an action on a simple contract." Tex.Bus. & Com.Code Ann. § 3.306 (U.C.C. § 3–306). This brings us to this question: whether Wear would have had any such defenses against Century. We hold that he would have.

The superior court concluded that Century's insolvency, which cut off Wear's deferred commissions expected to pay his note, did not affect his liability on the note, since that liability was personal. There is authority for this view. *See O'Hern v. DeLong*, 298 Ill.App. 375, 19 N.E.2d 214 (1939), involving facts similar to the instant case. *O'Hern* was grounded on the premise that insolvency totally cuts off an agent's right to deferred commissions. This premise is supported by several other cases: *State ex rel. Palmer v. Peoria Life Insurance Co.*, 376 Ill. 517, 34 N.E.2d 829 (Ill.1941), *cert. denied sub nom. Harwick v. O'Hern*, 314 U.S. 688, 62 S.Ct. 300, 86 L.Ed. 551; *Moore v. Security Trust & Life Insurance Co.*, 168 F. 496 (8th Cir. 1909). *See generally* Annot., 36 A.L.R.3d 958, 1018–21 (1971).

We do not agree with the view espoused by *O'Hern* and the other cases referred to in the foregoing paragraph. If Century had sued Wear on the note, it is simply a matter of fairness that Wear have a right of set-off against Century for the deferred commissions coming due on policies that Wear had written. This was in essence the agreement between Century and Wear. Wear was to write insurance policies for the benefit of Century, and he was to receive, as compensation for his labor, a certain percentage of the premiums paid on those policies; Century, impliedly, was to remain in business so that the policies which Wear had sold could remain in effect and generate commissions for Wear's benefit.

It is true that if some of Wear's policies lapsed, there would be no further premiums paid on those policies upon which Wear's commissions could be determined. But because the value of deferred commissions that Wear was owed in the future was approximately double his indebtedness on the note, it is fair to presume that a suffi-

cient number of policies would remain in effect so Wear would have received at least half of his deferred commissions and fees, or enough to balance out the indebtedness on the note.

We adopt this position because we believe that it is more likely to achieve substantial justice than the opposite view, which would cut off the agent entirely from premiums paid in the future if his company became insolvent and the policies written by the agent are transferred to another insurer. The agent's right to a percentage of the premium on a policy is a property right which becomes fixed as soon as the policy is taken out, and then is realized when the premiums are actually paid from time to time. *See General American Life Insurance Co. v. Roach,* 179 Okl. 301, 65 P.2d 458 (1937). Wear wrote a good deal of insurance for Century, and in our opinion it is not just that, due to Century's breach of its implied agreement, Wear be totally deprived of his right to commissions on that insurance, which would be the effect of holding him liable for the balance due on the note when it was accelerated by the bank. Wear could not be deprived of his right to commissions on the policies he wrote as a credit against the indebtedness on the note, regardless of whatever terms existed by which Century, through the receiver, transferred its insurance policies to National Old Line. Because Century breached its implied agreement to remain in business, Wear has been deprived of the right to his deferred commissions. Wear thus would have had a defense against Century if it had sued on the note.

We are now confronted with this question: whether the bank is also subject to the defense that Wear had against Century. The defense had not ripened at the time the note, no longer negotiable, was transferred to the bank, but the potential for nonperformance by Century was present. However, under Texas law,[11] where a set-off arises out of the same transaction which created the obligation which is assigned, which is the situation here, the obligor may assert subsequent nonperformance by the obligee as a defense against the assignee. Texas Business & Commerce Code Ann. § 9.318(a) provides:

Unless an account debtor has made an enforceable agreement not to assert defenses or claims arising out of a sale as provided in Section 9.206 the rights of the assignee are subject to

(1) all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom; and

(2) any other defense or claim of the account debtor against the assignor which accrues because the account debtor receives notification of the assignment.

We reach the same result by the application of general law. As Corbin states:

A counterclaim, setoff, or recoupment, arising out of the same transaction as that by which the claim of the assignee was itself created, is usable against the assignee in precisely the same cases that it would be so usable if it were operative as a complete defense. Its operation against the assignee is not affected by the fact that some of the events creating it occurred after the assignment or even after notice of the assignment. The transaction on which the assignee depends is itself a sufficient warning to him that counterclaims may grow out of that transaction requiring an adjustment of remedies.

*See also* Restatement (Second) Contracts § 168(3) and Official Commentary to § 9–

---

11. The determination of whether a claim of the defendant may be pleaded by way of set-off or counterclaim is generally considered procedural and thus governed by the law of the forum state. *See* Restatement (Second) Conflict of Laws § 128 comment *c.* Where, however, as here, the defendant's claim, if allowed, would constitute an alteration of the rights of the parties as determined by the original transac-tion, the question becomes substantive rather than simply one of voiding two suits. *Id.* In such a situation, the law of the state which has the most significant relation with the contract, the assignment and the parties should govern. *See generally* Goodrich, Conflict of Laws 221–22 (4th Ed. 1964); Restatement (Second) Conflict of Laws §§ 208–210. Here that would be Texas.

318(1) of the Uniform Commercial Code. If we were to apply Alaska law, we would construe AS 09.65.060 in a manner consistent with these authorities.[12]

■ The bank contends that Wear did not fulfill his contractual conditions precedent governing his receipt of commissions. Specifically, the bank alleges that Wear never proved that the insurer collected premiums on the policies Wear sold, and that Wear did not show that $50,000 of the insurance he sold remained in force.[13] It is our opinion that Century waived its right to enforce these conditions precedent by going into receivership, because this made it impossible for Century to collect premiums and for it to keep $50,000 of Wear-sold insurance in force.

■ The bank finally argues that Wear broke his contract and thus forfeited his right to commissions, by "twisting," *i. e.,* by inducing Century policyholders to cancel their Century policies and insure instead with another company represented by Wear so that he could get the higher first-year commissions.[14] We find this argument untenable. There is no convincing evidence of twisting; the drop in Wear's deferred commissions that occurred was to be expected in view of Century's financial problems.

We conclude that Wear had a valid defense to the bank's action on the promissory note. The judgment of the superior court is REVERSED.

12. AS 09.65.060 provides:

> *Defense not prejudiced by assignment.* If there is an assignment of a thing in action, the action by the assignee is without prejudice to a setoff or other defense existing at the time of, or before notice of the assignment. But this section does not apply to a negotiable promissory note or bill of exchange transferred in good faith and upon valuable consideration before due.

The last sentence of this statute has no application here because the note had lost its negotiability, and the bank took subject to all defenses which would be available.

13. A document entitled "Agent's Contract," as executed by Wear and by Century Life, provides in paragraph Q2 as follows: "While this Contract remains in force the Agent shall be entitled to the renewal commission shown in the Schedule of Commissions and subject to the conditions of this Contract as long as there is in force $50,000 of insurance produced by him."

14. Paragraph G of the Agent's Contract provides:

> Should the Agent at any time endeavor to induce representatives of the Company to discontinue their Contracts, or its policyholders to relinquish their policies, the Agent shall forfeit any and all future commission interest that he might otherwise have acquired under any and all contracts with the Company.