Pioneer Life Insurance Company, Appellee, v. Alliance Life Insurance Company, Appellant.

Gen. No. 9,498.

Heard in this court at the October term, 1939. Opinion filed February 17, 1940.

GEORGE Z. BARNES and GEORGE W. HUNT, both of Peoria, for appellant.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, for appellee; FLOYD E. THOMPSON, of Chicago, and CLARENCE W. HEYL, of Peoria, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

This is a suit brought by the Pioneer Life Insurance Company upon an indemnity policy of reinsurance is-

sued by the Peoria Life Insurance Company on July 12, 1932, in the amount of $24,000 on the life of Joseph Marzano, which policy, plaintiff alleged, was assumed by the defendant. The answer of the defendant admitted that the Peoria Life Insurance Company executed and delivered the reinsurance indemnity policy on July 12, 1932, as alleged, but denied that the defendant ever assumed or agreed to carry out the obligation of the Peoria Life Insurance Company to the plaintiff. A trial before the court without a jury resulted in a finding and judgment in favor of the plaintiff and against the defendant for $28,801.83 and costs of suit and the defendant appeals.

The record discloses that prior to October 16, 1931, the Rock-River Valley Insurance Company was an assessment insurance company organized under the laws of this State with its principal office in Rockford. Subsequently its name was changed to the Pioneer Life Insurance Company, appellee herein. On October 16, 1931, it entered into an automatic reinsurance agreement with the Peoria Life Insurance Company of Peoria, hereinafter referred to as the Peoria Life, this agreement, in the insurance business, is spoken of as a treaty for reinsurance. In the instant case, appellee by this treaty, among other things, obligated itself that before applying to any other company for reinsurance upon a standard risk, it would first bind the Peoria Life and the Peoria Life agreed to be automatically bound upon all risks accepted at standard rates by appellee as of the date appellee became bound by virtue of its policy. Appellee also obligated itself to maintain with the Peoria Life such reinsurance so long as the original policy should remain in force. While this treaty was in effect and the parties were operating thereunder, appellee issued its policy of insurance on the life of Joseph Marzano, effective March 26, 1932, by which it agreed to pay his beneficiaries the sum of $25,000. The statute under which appellee was organ-

ized limited the amount of insurance which it could carry on one risk to $1,000 and the Peoria Life recognized this fact. On April 25, 1932, appellee submitted its special application for reinsurance of this risk, together with the application for insurance of Dr. Marzano to appellee, his medical examination and other documents, to the Peoria Life and afterward on July 12, 1932, appellee submitted to it a formal application, all as provided by the treaty for reinsurance of October 16, 1931. This application was for reinsurance to the extent of $24,000 and was duly accepted by the Peoria Life and reinsurance granted effective from March 26, 1932 and subject to all the terms and conditions of the application and the treaty for reinsurance. Appellee paid the Peoria Life the premium due it under this reinsurance agreement for the quarter ending December 25, 1933.

On November 15, 1933, Charles V. O'Hern was appointed receiver of the Peoria Life Insurance Company by the director of insurance and on that day he qualified and a decree was rendered by the circuit court of Peoria county finding the company insolvent and directing its liquidation by the receiver. At that time the obligations of the Peoria Life to appellee were evidenced by numerous reinsurance policies aggregating $90,294, one of which was the one herein referred to reinsuring appellee on its policy issued upon the life of Dr. Marzano. On November 23, 1933, some of the officers of appellee discussed with the receiver of the Peoria Life its reinsurance in that company and were told by the receiver that he could give them no information regarding the status of their reinsurance in the Peoria Life and that they must decide for themselves what course they should pursue regarding reinsurance of their existing and future business. Thereafter appellee entered into a treaty for reinsurance with the American Central Life Insurance Company of Indianapolis by the provisions of

which appellee obligated itself to exclusively reinsure with the American Central Life Insurance Company all of its new business and the American Central Life Insurance Company obligated itself to automatically accept the same and in addition some 88 of the risks formerly reinsured by the Peoria Life were transferred to the American Central Life Insurance Company and accepted by it. This treaty is dated December 11, 1933, and reinsurance agreements were executed by the American Central Life Insurance Company in January, 1934, but there is some evidence to the effect that the treaty was actually signed by the parties on February 27, 1934, however, on January 18, 1934, appellee wrote the receiver of the Peoria Life advising him that it had completed a reinsurance contract with the American Central Life Insurance Company to reinsure the outstanding reinsurance policies as the coverage period expired with the Peoria Life and to cover new business as written. On December 22, 1933, the American Central Life Insurance Company wrote appellee in connection with some phases of this treaty and among other things said: ''With reference to the business that you had heretofore placed with the Peoria, we are prepared to assume the coverage with the exception of the risks of Isidor B. Freed and Joseph Marzano. . . . The reinsurance of the old business will be effective as of noon on the day we receive notice from you that this proposal is satisfactory to you.''

On December 21, 1933, Dr. Marzano died and thereafter appellee paid his beneficiaries the face of his policy. On January 23, 1934, proofs of the death of Dr. Marzano were submitted by appellee to the receiver of the Peoria Life and the receiver, on January 30, 1934, acknowledged the receipt thereof and advised appellee that all death claims were being held in abeyance subject to the further order of court. On March 1, 1934, the American Life Insurance Company assumed $4,000 of the policy issued by appellee to the said Isador B.

Freed, which had formerly been ceded by it to the Peoria Life and the parties to the treaty between appellee and the American Life Insurance Company thereafter carried out their respective obligations for reinsurance under that treaty.

In the liquidation proceedings of the Peoria Company, the circuit court of Peoria county, on August 22, 1934, approved the report of the receiver recommending the approval of the proposal of appellant, then known as the Life and Casualty Company of Chicago, for the reinsurance of the business of the Peoria Company. With this decree there was filed the final draft of the contract between appellant and the receiver, which was thereafter executed by the respective parties on October 4, 1934, according to the provisions of this decree and duly approved by the director of insurance and the circuit court. Among other provisions of this contract is the following:

"The Company does hereby reinsure and assume as of November 15, 1933 (subject to the liens, terms, conditions and provisions and only to the extent herein specifically provided), the liability of the Peoria Life under all policies and contracts of insurance, including . . . all reinsurance contracts issued or assumed by the Peoria Life and outstanding and in force on the books and records of the Peoria Life on November 15, 1933, subject, however, to any and all defenses against claims and actions upon said policies or contracts which would have been available to said Peoria Life had this Agreement not been made. . . . The Company may continue, discontinue or replace any reinsurance agreement between the Peoria Life and any other company, but shall not reinsure for its own account any part of the retention of the Peoria Life in any policy on November 15, 1933. Subject to the foregoing, the Company shall have discretionary powers in handling all transactions pertaining to reinsurance ceded by or accepted by the Peoria Life on a basis that is fair

and equitable to the policyholders of the Peoria Life. The receiver shall assign to the Company all the right, title and interest of the Peoria Life and of the Receiver in and to all reinsurance agreements between the Peoria Life and other insurance companies, together with all rights and privileges thereunder, including the right of the Receiver to terminate or cancel any such agreement.'' This agreement also provided that the receiver should deliver to appellant the assets of the Peoria Company with some exceptions which should constitute the Peoria Life Fund and the receiver was required to mail a copy of this agreement to all persons named as insured in contracts and policies in force with the Peoria Company on November 15, 1933, and provided that former policyholders of the Peoria Company who did not file claims in the receivership proceedings were considered as assenting to the reinsurance agreement and as having assigned to the Peoria Fund all claims against the Peoria Company. After the execution of this contract between the receiver and appellant a copy thereof was sent to appellee, together with a certificate of assumption, which recited that appellant thereby assumed and agreed to carry out the obligations of the Peoria Company under its reinsurance agreement with appellee, subject to the terms and conditions named in the policies and treaty agreement and subject to the agreement between the receiver and appellant, provided, ''(a) that the policies of reinsurance were in full force and effect on November 15, 1933, as an obligation of Peoria Life Insurance Company under the terms of said policies and said treaty and (b) said policies are an obligation under the terms of said reinsurance agreement.''

It is the contention of appellee that each reinsurance agreement entered into between appellee and the Peoria Company was a separate and distinct contract, that the Marzano contract was in full force and effect on November 15, 1933, as an obligation of the Peoria

Life Insurance Company, that this contract was revived and renewed by the decree of the circuit court of August 22, 1934, and was assumed by appellant by the reinsurance agreement entered into between it and the receiver on October 4, 1934.

Counsel for appellant concede that the policy of insurance issued by appellee to Dr. Marzano was in effect at the time of his death and that the Peoria Life had received its portion of the premiums prior to November 15, 1933, to continue the reinsurance in effect to and including December 25, 1933, but it is insisted by counsel that the reinsurance treaty between appellee and the Peoria Life and all individual policies, agreements or cessions thereunder form an indivisible contract, that the Peoria Life accepted each risk under the basic treaty of October 16, 1931, that this treaty was exclusive and prohibited appellant from obtaining any other reinsurance with any company other than the Peoria Life, that its reinsurance treaty with the American Central Life Insurance Company precluded, by its terms, a continuance of any further reinsurance relationship with appellant and that by so doing it was impossible for appellee to become an automatic reinsurance treaty holder under the terms of the reinsurance agreement entered into by the receiver of the Peoria Life and appellant. In support of this contention, appellant cites and relies upon *Manhattan Life Ins. Co. v. Prussian Life Ins. Co.*, 296 Fed. 39. In that case it appeared that the Manhattan Life Insurance Company desired to procure reinsurance of a certain portion of its liability under certain policies issued by it and to that end entered into a treaty of reinsurance with the Prussian Life Insurance Company by the provisions of which the Prussian reinsured the amount of certain policies in excess of the maximum limit retained by the Manhattan Company. The agreement became effective on January 15, 1914. On November 14, 1917, the Manhattan served

formal notice of cancellation of the treaty as provided in the agreement and obtained other reinsurance not only for new business but also for some of the policies already insured by the Prussian and after the cancellation notice became effective, Manhattan ceased to pay Prussian any renewal premiums on the reinsurance of such of its risks as it had insured elsewhere but continued to tender premiums on such risks as it had not insured in other companies. Thereafter Prussian gave notice to the Manhattan that it terminated its liability under the agreement of 1914 and all certificates of reinsurance heretofore issued by it pursuant thereto. This notice assigned as breaches of the contract the nonpayment of premiums due from the Manhattan and its refusal to permit Prussian to examine its books contrary to the provisions of the treaty of 1914. The Manhattan continued to tender premiums under the policies which it had not reinsured in other companies and Prussian refused to accept the same. While this was going on, a party insured by a policy issued by the Manhattan and reinsured by Prussian and which the Manhattan had not reinsured in a company other than Manhattan died and suit was instituted by Manhattan to recover, among other things, the amount for which Prussian had reinsured the risk which had matured by the death aforesaid. In holding there could be no recovery for this item the circuit court of appeals for the second circuit said: ''Reduced to its lowest terms plaintiff's proposition is this: My contract with Prussian meant that, when I exercised my right of cancellation by giving a month's notice in writing, I could thereafter leave the Prussian as reinsurer on such then existing risks as I did not care to place elsewhere, but as to any risk on which I preferred other reinsurers, or no reinsurance, I could whenever I pleased cease paying premiums. Colloquially put, this interpretation empowered Manhattan to take at pleasure the cream of its business from Prussian, and leave the

latter the skim milk. Technically phrased, Manhattan asserts that, whatever may be said of the agreement to place 'any excess' over its own retention limit with Prussian, the agreement section providing that reinsurance 'in force (at cancellation) *shall* be carried by the Prussian in accordance with the terms of this agreement, unless terminated or modified by special agreement,' embodies a divisible contract, the factors being the several risks; therefore if and when Manhattan committed a breach in respect of one or more risks by failing to pay premiums, Prussian was not thereby released from the obligation of carrying the remaining risks, but was left to such action for damages as it might be able to bring in respect of premiums not paid. However put, we cannot accede to this interpretation; it distinctly lacks morals, and this suit is in equity; and while equity follows the law, we regard the contract between the parties as legally single. It was, as has been well said, a contract for insurance, not one of insurance, and the insurance which Prussian agreed to furnish was to be in respect of the entire first excess over Manhattan's retention limit, as specifically set forth in the agreement itself. Whatever was the body of insurance thus furnished and in being, at the moment of cancellation, that whole body of insurance Prussian was to continue to carry until Manhattan's primary liability was ended, saving special agreements from time to time made. The agreement between the parties referred, not to particular risks, but to the assumption of a corpus of liability; it dealt not in retail, but in gross. . . . Consequently we hold, on the wording of the contract, that Manhattan committed two breaches of the whole agreement: (1) It refused to permit an examination of its books, etc., as to some risks, and *some* risks are included in the phrase 'any risks' used in the fifteenth section; and (2) it deliberately and not by inadvertence refused to pay pre-

miums on numerous risks, which were part of the 'reinsurance in force' when cancellation notice given.''

Counsel for appellee insists that the foregoing decision has nothing to do with the issues in this case, that here the Marzano reinsurance was not an automatic cession under the treaty, but a facultative cession, there being a special application and a special investigation by the Peoria Life and further that the amount of the premium was not affected by a continuance of the treaty relations between the Peoria Life and appellee nor was it affected by the number of other contracts of reinsurance applied for by appellee or issued by Peoria Life. Counsel further insist that appellee never refused to pay premiums on reinsurance business which would have been due Peoria Life had it not gone into receivership but that when Peoria Life did go into receivership appellee either had to procure reinsurance or go out of business. Much of this is true and the facts in the instant case are not analogous to the facts in the *Manhattan Life Insurance Company* case but that case is authority for the proposition that the reinsurance treaty and the various cessions including the Marzano agreement are to be construed together in determining the intention of the parties in order to ascertain their respective rights and liabilities.

In the instant case the treaty, agreements and cessions theretofore executed by appellant and Peoria Life were terminated by the insolvency of the Peoria Life and the liquidation of that company. The evidence discloses that many individual policyholders paid their premiums on their policies to the receiver after November 15, 1933, and the receiver retained the same in a separate fund, acting under the directions of the court which was supervising the liquidation of Peoria Life. Appellee never paid any premiums to the receiver but recognized that its treaty with Peoria Life was terminated and reinsured its business with other companies. After the death of Dr. Marzano appellee

furnished the receiver of Peoria Life with proofs of his death and was advised by the receiver on January 30, 1934, that all death and disability claims were held in abeyance by the receiver subject to the order of court. Appellee correctly concluded that the original treaty and cessions were terminated and its counsel now say that the fact that it made a new treaty with the American Central Life Insurance Company and agreed to reinsure all of its excess risks with it in no way prevented it from making a similar contract with appellant. Perhaps not, but if it did it would be breaching its agreement with the American Central and the record is clear that appellee never intended at any time to enter into any such agreement with appellant.

If any liability rests upon appellant, it arises by virtue of the reinsurance agreement of October 4, 1934, entered into by the receiver and appellant. Appellee was not a party to that agreement other than in the sense that it was a creditor of the insolvent company and the receiver, in liquidating the assets of the insolvent, was its representative. This reinsurance agreement covers 23 pages of the printed abstract. No good purpose could be served by setting it forth in this opinion. In its preamble it is recited that a large part of the assets of the defunct company is invested in that class of securities which has depreciated greatly with current depressed markets and great loss would accrue to the policyholders of such company, their beneficiaries and their dependents if forced liquidation of all assets were undertaken at that time. We think this reference and other references in this agreement to policyholders meant individual policyholders rather than appellee, an insurance company itself. There is nothing found in this agreement which obligated appellant to pay all of the obligations of the Peoria Life as they existed on November 15, 1933. This contract of reinsurance had to do with assenting individ-

ual policyholders and dealt with no other contract or obligation of the insolvent Peoria Life. *People ex rel. Palmer v. Peoria Life Insurance Co.,* 303 Ill. App. 430, in which an opinion is this day filed. While appellant, by this contract, did assume the liability of the Peoria Life under all reinsurance contracts issued by the Peoria Life and in force November 15, 1933, the agreement must be read in its entirety and it expressly conferred upon appellant discretionary powers in handling such contracts on a basis that is fair to the policyholders of the Peoria Life. The agreement further provided that in consideration of this assumption by appellant, the receiver was required to assign to appellant the interest which the Peoria Life had and which the receiver acquired in and to this treaty of October 16, 1931. When this language is considered in the light of how things stood on October 4, 1934, appellant was clearly within its rights when it rejected appellee's claim under the Marzano cession. So far as the treaty which the receiver had with appellee was concerned, everything therein of benefit to appellant had been acquired by the Central American Insurance Company and all that remained was a liability under the Marzano claim. The Marzano reinsurance cession, although in force on November 15, 1933 was not, in our opinion, revived and renewed by the decree of August 22, 1934 or by the contract which was entered into by appellant and the receiver on October 4, 1934. By its conduct appellee had placed itself in the class of general creditors of the Peoria Life and was not a beneficiary of this reinsurance agreement.

The judgment of the circuit court of Peoria county will therefore be reversed.

*Judgment reversed.*