576

(No. 25651.—

THE PIONEER LIFE INSURANCE COMPANY, Appellant, *vs.*
THE ALLIANCE LIFE INSURANCE COMPANY, Appellee.

*Opinion filed October 11, 1940—Rehearing denied Dec. 10, 1940.*

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, (FLOYD E. THOMPSON, and CLARENCE W. HEYL, of counsel,) for appellant.

GEORGE Z. BARNES, and GEORGE W. HUNT, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, the Pioneer Life Insurance Company, instituted an action in the circuit court of Peoria county against the defendant, the Alliance Life Insurance Company, to recover the amount alleged to be due on a reinsurance policy issued by the Peoria Life Insurance Company (hereinafter called Peoria) to plaintiff upon the life of Joseph Marzano. By its complaint, plaintiff charged that defendant assumed the liability of Peoria under a reinsurance agreement entered into between defendant and the re-

ceiver of Peoria. Answering, the defendant denied liability, asserting that it did not assume the payment of the Marzano reinsurance policy. A trial by the court without a jury resulted in a judgment in favor of plaintiff and against defendant for $28,801.83. Upon appeal, the Appellate Court for the Second District reversed the judgment of the circuit court. (*Pioneer Life Ins. Co.* v. *Alliance Life Ins. Co.* 304 Ill. App. 13.) The Appellate Court has granted a certificate of importance and allowed a further appeal to this court.

The Pioneer Life Insurance Company, formerly known as the Pioneer Mutual Life Insurance Company and even earlier as the Rock River Valley Insurance Company, will be referred to as plaintiff when reference is made to its transactions under any of its three names. The Alliance Life Insurance Company was formerly named the Life and Casualty Company of Chicago. It will be designated as defendant.

Plaintiff is licensed to engage in the life insurance business on the assessment plan. The applicable statutory provision (Smith-Hurd Stat. 1933, p. 1650) limited the amount of insurance which it could carry on a life and required the reinsurance of any excess. October 16, 1931, plaintiff entered into an "Automatic Reinsurance Agreement," referred to by the parties and commonly known as a reinsurance treaty, with Peoria, setting forth the terms and conditions under which Peoria would grant reinsurance to plaintiff. By the treaty, plaintiff agreed to first bind Peoria on each standard risk up to the amount of $10,000 before applying to any other company for reinsurance on a standard risk, and Peoria, on the other hand, under section 3 captioned "Automatic Cessions," agreed to be automatically bound on all risks accepted at standard rates by plaintiff for an amount not to exceed $10,000 on each risk. Section 7, denominated "Facultative Cessions," sometimes referred to as optional cessions, provided that upon receipt of an ap-

plication for insurance upon a sub-standard risk (apparently a risk exceeding $10,000) plaintiff might reinsure any part or all of such risk in Peoria. Provision was made for submission of a preliminary application for reinsurance to Peoria, accompanied by pertinent *data* such as medical reports, and for notification by Peoria to plaintiff of the former's early decision relative to the preliminary application. "Policies of reinsurance issued hereunder," by section 8, were to be on the non-participating yearly renewable term plan. The last section provided that either party might discontinue the agreement at any time so far as it related to insurance issued after the date of discontinuance by giving the other party sixty-days' written notice to that effect.

On March 26, 1932, plaintiff issued its policy on the life of Joseph Marzano in the amount of $25,000. Peoria approved plaintiff's special application which contained no reference to the treaty and, on July 12, 1932, executed its "Reinsurance Policy," No. R36090, on Marzano's life for $24,000, effective as of March 26, 1932, as a facultative cession under section 7 of the treaty and carried the policy on its records as a separate reinsurance policy. The policy recites that it is subject to the terms and conditions of the treaty. Premiums were paid on the reinsurance policy as they became due and on November 8, 1933, plaintiff paid to Peoria the premium then due, covering the period ending December 26, 1933.

November 15, 1933, Peoria was placed in receivership, and an order for its liquidation was entered by the circuit court of Peoria county the same day. When the receiver was appointed Peoria admittedly had an unused balance of $14.86 of the premium which had been paid by plaintiff on the Marzano reinsurance policy, a sum sufficient to continue the policy in force beyond December 21, 1933, the day Marzano died, and until December 26, 1933. Peoria also had in its hands on November 15, 1933, $113.08 represent-

ing the unused portion of the premiums which had been paid to it on the several reinsurance policies issued to plaintiff.

In the meantime, later in November, plaintiff consulted with employees of the receiver relative to the status of its reinsurance with Peoria. On December 11, 1933, plaintiff commenced negotiations with the American Central Life Insurance Company, of Indianapolis, Indiana, (herein referred to as American) with respect to reinsurance of its existing risks. A list of current risks was submitted. December 22, 1933, the day after Marzano's death, and before learning of his death, American informed plaintiff it was prepared to assume all but two of the risks previously placed with Peoria, one being the Marzano policy, and that additional information would be required before assuming the questioned risks. The first contracts for reinsurance with American were submitted by plaintiff about January 9, 1934. American issued its initial reinsurance policies to plaintiff as of January 26, 1934, taking up the reinsurance policies of plaintiff as the respective periods for which Peoria held reserves to carry them expired. There was thus no accumulated reserve on any policy taken by American as new business, and plaintiff paid to American only what was required actuarially to carry the risks in the future. January 18, 1934, plaintiff advised the receiver of Peoria that it had completed a reinsurance contract with American "to reinsure the outstanding reinsurance policies as the coverage period expired with Peoria Life Insurance Company on each policy, the applications pending issuance of reinsurance policies, and to cover new business as written." A reinsurance treaty between plaintiff and American designated "Automatic Reinsurance Contract," provides that on and after December 11, 1933, plaintiff shall exclusively reinsure with American. Article XII states that the treaty may be terminated as to further reinsurance by either party giving

thirty-days' notice of cancellation. American delivered the executed treaty to plaintiff in the latter part of February, 1934. Excluded from the risks formerly reinsured by Peoria and transferred to American was the Marzano policy. The facts recounted conclusively demonstrate that the reinsurance treaty between plaintiff and American was not in effect during Marzano's lifetime, and that American did not assume and reinsure the Marzano risk.

August 22, 1934, a decree was entered in the receivership proceeding approving a reinsurance agreement proposal by defendant to Peoria. The decree adjudges that the former contracts of insurance with policyholders of Peoria "are hereby revived and renewed." The receiver was directed, upon the execution, approval and delivery of the proposed contract, to mail to the insured named in "all contracts and policies issued, assumed or reinsured" by Peoria in force on November 15, 1933, a printed copy of the contract, as executed, and, further, the receiver was authorized to permit defendant to attach its certificate of assumption to each copy of the contract. A pertinent portion of the decree declared that any policyholder who did not desire to accept the benefits of the contract with defendant should file his claim with the receiver within the time prescribed and that, in such case, the defendant would be under no obligation or liability of any kind or character as to any policy or contract in respect of which such dissent be made and claim filed, and the policy or contract of such policyholder stand terminated as of November 15, 1933. The same paragraph provided that a policyholder who did not so dissent should be conclusively bound by his failure so to do, and be considered as having assigned to defendant, for the benefit of the Peoria Life Fund created under the contract, all his claims against Peoria, as more specifically provided in paragraph 48 of the contract. The rights of defendant in and to the assigned claim were described in

another paragraph of the decree which required it to file a claim against the receiver for all amounts owing to it as assignee under paragraph 48.

Conformably to the decree, on October 4, 1934, the reinsurance agreement between the receiver of Peoria and defendant was executed and received the approval of the Director of Insurance of the State. Paragraph 2 of the agreement entitled "Reinsurance and Assumption of Policies" recites that defendant "does hereby reinsure and assume as of November 15, 1933 (subject to the liens, terms, conditions and provisions and only to the extent herein specifically provided) the liability of the Peoria Life under all policies and contracts of insurance, including * * * all reinsurance contracts, issued or assumed by the Peoria Life and outstanding and in force on the books and records of the Peoria Life on November 15, 1933, subject, however, to any and all defenses against claims and actions upon said policies or contracts which would have been available to said Peoria Life had this agreement not been made." Because of the impaired financial condition of Peoria, section 7 imposed a lien on each policy as of November 15, 1933, "provided, however, such lien shall not apply to any policy issued or assumed by Peoria on the yearly renewable term plan, inasmuch as no substantial or accumulative reserve is carried against any such policy." Section 7, it is noted, does not say there is *no* reserve in the Peoria Life Fund, merely stating that the reserve is not substantial. The reserve on the Marzano policy, issued by Peoria on the yearly renewable term plan, amounted to $14.86 on November 15, 1933. This balance passed to the receiver and, under a subsequent paragraph of the agreement of October 4, 1934, was automatically assigned for the benefit of the Peoria Life Fund. Paragraph 29(b) provides that the receiver, concurrently with the delivery of assets, will assign all right, title and interest of Peoria and of the receiver in and to all reinsurance agreements (treaties) between

Peoria and other insurance companies. Paragraph 31 provides that all assets delivered and sums paid by the receiver to defendant shall constitute the "Peoria Life Fund," and that after January 1, 1949, or upon such earlier date as the lien upon all policies shall be completely removed, all assets in the fund shall become a part of the general assets of defendant. Paragraph 35 ordains: "Notwithstanding any other provision of this agreement, if by operation of law or any judicial decision or decisions the Company [defendant] shall be compelled or required to pay any other, greater, or additional amount than is contemplated or specifically provided by the terms of this agreement, on account of any contract, obligation, conduct or transaction of said Peoria Life, payments so made shall be a charge against the Peoria Life Fund and shall be payable and paid from the accumulations, earnings and assets of the Peoria Life Fund." By paragraph 42, the receiver was instructed to mail promptly to "the insured named in all contracts and policies in force on November 15, 1933," a printed copy of the executed reinsurance agreement to which defendant was permitted to attach its certificate of assumption.

Eighteen paragraphs are called "General Provisions." Of these, paragraph 45, relied upon by defendant, declares: "The Company [defendant] may continue, discontinue or replace any reinsurance agreement between the Peoria Life and any other company, but shall not reinsure for its own account any part of the retention of the Peoria Life in any policy on November 15, 1933. Subject to the foregoing, the Company [defendant] shall have discretionary powers in handling all transactions pertaining to reinsurance ceded by or accepted by the Peoria Life on a basis that is fair and equitable to the policyholders of the Peoria Life. The receiver shall assign to the Company [defendant] all the right, title and interest of the Peoria Life and of the receiver in and to all reinsurance agreements between the Peoria Life and other insurance companies, together with

all rights, and privileges thereunder, including the right of the receiver to terminate or cancel any such agreement." Under this provision, if plaintiff owed Peoria or the receiver any money under the treaty in the form of unpaid premiums, defendant would be entitled thereto. The forty-eighth paragraph provides that every person entitled to accept any benefit under the agreement shall be considered as assigning to defendant for the benefit of the Peoria Life Fund, all his claims against Peoria unless he shall file a claim with the receiver in accordance with the decree of August 22, 1934. Further, paragraph 48 states that all the assets of Peoria (with immaterial exceptions) together with the premiums due after November 15, 1933, provided to be paid and delivered to defendant pursuant to the reinsurance agreement, shall be delivered to and received by defendant for the benefit of the Peoria Life Fund as the assignee of all holders of policies or contracts issued or assumed by Peoria who shall accept the benefits of or become bound by the agreement, and in consideration of the assumption by defendant of the obligations on its part to be kept and performed pursuant to the terms of the agreement.

From the evidence it appears that plaintiff received copies of the insurance agreement of October 4, 1934, and defendant's certificate of assumption between October 4 and 10. The certificate of assumption, addressed to plaintiff, refers to the latter as "Ceding Company," and certifies that defendant "hereby assumes and agrees to carry out the obligations of Peoria Life Insurance Company under policies of reinsurance issued under the terms of a certain reinsurance treaty between said company and the above named ceding company, subject to the terms and conditions named in said policies and said treaty, and further, subject to the terms and conditions of the reinsurance agreement which is attached hereto and made a part hereof; provided (a) said policies of reinsurance were in full force and effect on November 15, 1933, as an obligation of Peoria Life Insur-

ance Company under the terms of said policies and said treaty; and (b) said policies are an obligation under the terms of said reinsurance agreement."

Subsequently, on October 25, 1934, defendant forwarded to plaintiff a statement for reinsurance premiums up to October 1, 1934, on reinsurance policies which were in force or past due on the records of Peoria as of November 15, 1933. Plaintiff's officers thereafter indicated their readiness to pay to defendant the premiums itemized on the statement. An employee of the receiver refused to accept the payment of the premiums, stating that the refusal was predicated on paragraph 45 of the reinsurance agreement, asserted to have given defendant "discretionary power to choose the companies that they would not care to do business with." Plaintiff's offer to revive with defendant the treaty of October 16, 1931, and to continue to make reinsurance cessions under it was refused.

Additional facts and circumstances merit mention. Proof of Marzano's death was presented to Peoria on January 23, 1934. Conferences and communications concerning the Marzano claim over a period of several months resulted in a letter of February 19, 1935, to plaintiff in which defendant construed the reinsurance agreement of October 4, 1934, as imposing no obligation on it to pay the claim. In due course, plaintiff paid $25,000 to the beneficiaries.

Plaintiff did not file a claim with the receiver for the amount to its credit on the books at the time the receiver was appointed, November 15, 1933. Furthermore, a letter to the receiver dated July 16, 1935, discloses that plaintiff then announced it had no divisible claim for unearned premiums against the receiver and, consequently, could not file claim therefor, pointing out that it had previously filed its claim with defendant incident to the Marzano claim.

The decisive question presented for decision is whether defendant assumed the obligation of Peoria under the reinsurance policy on Marzano's life pursuant to the reinsurance

agreement of October 4, 1934. Plaintiff contends that by paragraph 2, defendant assumed, as of November 15, 1933, the obligations of Peoria under its insurance policies and reinsurance contracts in force on the day named. Resisting plaintiff's claim, defendant maintains that its assumption of the liabilities of Peoria conformably to paragraph 2 is expressly limited by paragraph 45. Insurance contracts, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have employed, and if they are free from ambiguity, their terms are to be taken and understood in their plain, ordinary and popular sense. (*Midwest Dairy Products Corp.* v. *Ohio Casualty Ins. Co.* 356 Ill. 389; *Kimbell Trust and Savings Bank* v. *Hartford Accident and Indemnity Co.* 333 id. 318; *Crosse* v. *Knights and Ladies of Honor,* 254 id. 80.) On the other hand, as the insurer is the party who prepares the contract, ambiguous or equivocal expressions whereby the insurer seeks to limit its liability will be construed most strongly against the insurer. (*Lenkutis* v. *New York Life Ins. Co.* 374 Ill. 136; *Midwest Dairy Products Corp.* v. *Ohio Casualty Ins. Co. supra; Cottingham* v. *National Mutual Church Ins. Co.* 290 Ill. 26.) Here, Peoria was, in effect, the original insurer of plaintiff, and defendant, by reinsuring and assuming the liability of Peoria under its reinsurance contracts, may now be deemed the insurer, and plaintiff, the insured.

An examination of the reinsurance agreement of October 4, 1934, discloses that particular reference is made in its preamble to the desire of the parties to effect an arrangement whereby the insurance interests of policyholders of Peoria will be conserved to the greatest possible extent and by which their contracts may be assumed by defendant. So far as plaintiff is concerned, expression of defendant's intention is found in paragraph 2 where it unqualifiedly agrees "to reinsure and assume * * * all reinsurance contracts," namely, reinsurance policies such as the Mar-

zano policy issued or assumed by Peoria and outstanding and in force on November 15, 1933. A familiar definition of the term "reinsurance" is a contract by which one insurer takes over the insurance risks of another insurer and becomes substituted as insurer in the place and stead of the original insurer. (*Carpenter* v. *Pacific Mutual Life Ins. Co. of California,* 74 Pac. (2d) 761; 33 Corpus Juris (Insurance) sec. 736.) A reinsurance policy is thus a contract of indemnity one insurer makes with another to protect the first insurer from a risk it has already assumed. (*Union Central Life Ins. Co.* v. *Lowe,* 349 Ill. 464.) In contradistinction, a reinsurance treaty is merely an agreement between two insurance companies whereby one agrees to cede and the other to accept reinsurance business pursuant to provisions specified in the treaty. The practice of issuing policies by insurance companies includes, among other things, the issuance of reinsurance policies on standard risks and also on sub-standard risks under special arrangements. The lumping of the different agreements under a contract has resulted in the term known to the insurance world as "treaties." Such a treaty is, in fact, an agreement between insurance companies to cover the different situations described. Reinsurance treaties and reinsurance policies are not synonymous. Treaties are contracts *for* insurance; reinsurance policies or cessions such as the Marzano policy are contracts *of* insurance. Section 7 of the treaty of 1931, under which the Marzano policy issued, regards reinsurance policies as separate and distinct contracts. The Marzano risk being over $10,000, as shown by the record, was specifically accepted by Peoria and plaintiff's liability to Marzano protected by the issuance of a reinsurance policy. The decree of the circuit court of August 22, 1934, recognizes that contracts with former policyholders of Peoria were destroyed by the receivership and proceeds to revive and renew such contracts. There were, apparently, a number of treaties between Peoria and com-

panies other than plaintiff. Reinsurance treaties, however, were not renewed and revived by the decree. Likewise, the reinsurance agreement of October 4, 1934, distinguishes between reinsurance policies and treaties. Paragraph 2 deals with contracts *of* insurance, including reinsurance contracts or policies, while paragraph 45 relates to treaties which are contracts *for* insurance. The earlier paragraph provides for reinsurance and assumption of liability of Peoria under all policies and contracts of insurance, among others, "all reinsurance contracts," as of a former period, November 15, 1933. The use of the words "issued or assumed" fortifies the conclusion that "contracts" is used synonymously with "policies," as treaties are neither "issued" nor "assumed" but are "made." Paragraph 45, appearing as a "general provision" of the reinsurance agreement, employs the term "reinsurance agreement," used interchangeably with "treaty,"—not "reinsurance contracts" such as reinsurance policies or cessions used in paragraph 2. It is conceded that the expression "reinsurance contract" may sometimes describe a reinsurance treaty such as the treaty of October 16, 1931, between Peoria and plaintiff or a reinsurance agreement such as the agreement of October 4, 1934, between the receiver of Peoria and defendant. Here, the context conclusively demonstrates that "reinsurance contracts" in paragraph 2 means "reinsurance policies" and the words "reinsurance agreement" in paragraph 45 mean "reinsurance treaty." By paragraph 45, defendant is permitted to continue, discontinue or replace any "reinsurance agreement," or treaty, between Peoria and any other company. Although paragraph 45, prospective in character, leaves to future negotiations the renewal of treaty relations formerly existing between Peoria and other companies, all reinsurance policies which were obligations of Peoria on November 15, 1933, under the retroactive provisions of paragraph 2, are reinsured and assumed as of the day last named, provided the policyholder (in this case, the plaintiff) accepts the re-

insurance agreement. Electing to not take any new risks from plaintiff, defendant did not renew the reinsurance treaty which prior to November 15, 1933, had existed between Peoria and plaintiff. The continuance or resumption of treaty relations was not, however, a condition precedent to the revival and assumption of reinsurance policies. Defendant was without authority, therefore, to decline to assume liability upon particular reinsurance policies of Peoria outstanding and in force on its books and records as of November 15, 1933, and which had matured before October 4, 1934. In short, paragraph 45 is not a condition or limitation to paragraph 2.

It cannot be said, as defendant argues, that the comprehensive language of paragraph 2 is restricted to individual policyholders to the exclusion of insurance companies. The agreement does not so limit the provisions of paragraph 2 but specifically enumerates in the class of "all policies and contracts of insurance" reinsured and assumed, "all reinsurance contracts." By its communication of September 13, 1934, to plaintiff, defendant has itself interpreted the reinsurance agreement contrary to the construction now advanced: "According to the terms of the reinsurance agreement, no lien attaches to risks assumed by the Peoria Life on the annual renewal term plan. [The Marzano reinsurance policy was a risk assumed by Peoria on this plan.] The incurred liability which the Peoria Life would have been obligated to assume, had receivership not occurred, will be assumed under the terms of this agreement." It will be observed that this letter was written in the interim between the judicial approval of the proposed reinsurance agreement on August 22, 1934, and its formal execution October 4, 1934. Furthermore, the statement in defendant's certificate of assumption that defendant "assumes and agrees to carry out the obligations of Peoria * * * *under policies of reinsurance issued under the terms of a certain reinsurance treaty* between said Company [defendant] and

the above named "Ceding Company" interprets the treaty of October 16, 1931, as providing for policies of reinsurance independent from the treaty itself. It thus appears that the certificate does not purport to assume the treaty but it does assume the policies of reinsurance issued pursuant to the treaty. Where the terms of an agreement are in any respect ambiguous and the parties have by their own acts placed a reasonable construction upon them, their interpretation will be adopted by the court. (*Chicago Daily News, Inc.* v. *Kohler,* 360 Ill. 351; *Slack* v. *Knox,* 213 id. 190.) The parties to an insurance contract may incorporate in it such provisions, not in violation of law, as they choose; and it is the duty of the courts to construe and enforce the contract as made. We are not warranted, under the cloak of construction, in making a new contract for the parties. (*Blume* v. *Pittsburgh Life and Trust Co.* 263 Ill. 160; *Crosse* v. *Knights of Honor, supra; Norwaysz* v. *Thuringia Ins. Co.* 204 Ill. 334.) Manifestly, the Marzano reinsurance policy falls within the description of contracts reinsured and assumed by defendant under paragraph 2 of the reinsurance agreement. It was a reinsurance contract outstanding and in full force as an obligation of Peoria on November 15, 1933. If plaintiff could have recovered against Peoria had it not gone into receivership then it is entitled to a recovery against defendant, provided, of course, it was an assenting policyholder within the contemplation of the insurance agreement of October 4, 1934.

The record discloses that plaintiff was an assenting policyholder. Subsequent to the execution of the reinsurance agreement between defendant and the receiver of Peoria, plaintiff became a party thereto by assenting in the manner prescribed by the agreement itself. In particular, by failing to file a claim against the receiver of Peoria for the amount to its credit on the day the receiver was appointed and thereby becoming a dissenting policyholder, plaintiff accepted the agreement and, in addition, assigned

unconditionally to defendant its claim against Peoria and its assets for the benefit of the Peoria Life Fund. Affirmative action was not required and only one mode of dissent was specified. A contractual relation between plaintiff and defendant came into existence and both parties were bound as of November 15, 1933. During the period from November 15, 1933, to October 4, 1934, plaintiff had no insurance with Peoria or with its receiver. Adequate consideration supported the promise by defendant to plaintiff. The consideration recited in the reinsurance agreement was the transfer to defendant by the receiver of the business of Peoria and the assignment to it of Peoria's assets, including the claim which plaintiff might have asserted against the Peoria receivership estate. There was thus the same consideration for the new promise of defendant to plaintiff as for the new promise of defendant to all other policyholders, whether individuals or insurance companies.

Defendant, to sustain the judgment of the Appellate Court, maintains, further, that plaintiff is excluded from the benefits of the reinsurance agreement as an assenting policyholder because it entered into a new reinsurance treaty with American between the dates of the Peoria receivership and the reinsurance agreement. This contention rests upon the fallacious premise that by reinsuring outstanding risks as the respective coverage periods expired with Peoria and, also, other new risks with American, plaintiff disavowed the basic treaty between Peoria and itself by rendering it impossible, on its part, to carry out the terms of the original treaty, and that since plaintiff did not and could not enter into a new treaty with defendant the latter did not assume and reinsure risks such as Marzano cession. The appointment of the receiver for Peoria on November 15, 1933,—not any act of plaintiff,—destroyed the reinsurance treaty between Peoria and plaintiff. From the evidence it appears that plaintiff was ready, willing and able at all times to enter into a new reinsurance treaty with defendant

and to pay it such premiums as would have been due on its reinsurance business with Peoria had the latter not gone into receivership. Nor was it unable to enter into a new treaty with defendant for reinsurance, because it had an outstanding treaty with American. Volume 2 of the Restatement of Contracts, (section 455,) formulates the applicable principle, as follows: "Impossibility of performing a promise that is not due to the nature of the performance, but wholly to the inability of the individual promisor, neither prevents the formation of a contract nor discharges a duty created by a contract." Even had plaintiff made inconsistent promises their existence would not necessarily have constituted impossibility of either promise. Under such circumstances, the promisor is obliged to keep his promise with both promisees or suffer the consequences. Although article XII of the treaty between American and plaintiff provides for its termination as to further reinsurance by either party giving thirty-days' notice of cancellation, it is of no concern to defendant whether plaintiff gave such notice for the reason that its outstanding treaty was not a bar to plaintiff's capacity to make a new treaty with defendant. The Marzano policy, the subject matter of the initial treaty, so far as this controversy is concerned, had been revived by the decree of August 22, 1934, and later, by the agreement of October 4, 1934, defendant assumed Peoria's obligations under it. Plaintiff was not precluded from assenting to the reinsurance agreement between defendant and the receiver of Peoria even though its treaty with American was then outstanding.

*Manhattan Life Ins. Co.* v. *Prussian Life Ins. Co.* 296 Fed. 39, invoked by defendant to support its contention that all of the individual reinsurance policies in force on November 15, 1933, together with the treaty of October 16, 1931, form an indivisible contract is far from decisive. The factual situation here is not analogous to the facts in the *Manhattan case.* There, the insured, the Manhattan

Life Insurance Company, breached its treaty for reinsurance with the insurer, the Prussian Life Insurance Company, in two material respects, namely, the deliberate nonpayment of premiums due on numerous risks of reinsurance and the refusal of permission to examine its books conformably to the treaty. The Circuit Court of Appeals for the Second Circuit, on these facts, held that Prussian, the reinsurer, was warranted in terminating its liability not only under the treaty but also on "all certificates of reinsurance heretofore issued pursuant thereto." In the present case, the treaty between plaintiff and Peoria was not breached by the insured, the plaintiff, but was abrogated and terminated by the receivership of the insurer. Subsequent to the appointment of a receiver of Peoria, plaintiff was impelled by the realities of the situation attending the receivership to seek and obtain new coverage on its risks with Peoria when the period covered by premiums paid to Peoria prior to November 15, 1933, expired. The *Manhattan case* recognizes that a treaty is a contract *for* insurance, and not one *of* insurance. Although a treaty for insurance may, of course, be terminated by agreement, breach, or otherwise, it does not necessarily follow that a reinsurance policy such as the Marzano reinsurance policy issued as a facultative cession and outstanding between the parties to the treaty would also terminate upon the abrogation of the treaty. Each reinsurance policy issued by Peoria, the reinsurer, was an independent contract. It is true that the reinsurance policy issued to plaintiff on the life of Marzano incorporates the terms and conditions of the prior reinsurance treaty between it, plaintiff, and Peoria as a part of its terms and conditions. The treaty became a part of the policy by reference, not the policy a part of the treaty. A contract, it is established, may consist of several documents connected to the signed document by reference. (1 Restatement of Contracts, sec. 208; *Western Metals Co.* v. *Hartman Ingot Metal Co.* 303 Ill. 479.) In particular, the Mar-

zano reinsurance policy was a separate contract bearing a special number, a facultative or option cession, and not an automatic cession under the treaty. Reinsurance premiums were stated in the policy and collected separately on it, irrespective of premiums fixed or collected on other outstanding reinsurance. Plaintiff's action is not on the reinsurance treaty of October 16, 1931, but is, instead, an action on (1) reinsurance policy No. R36090 issued by Peoria and assumed by defendant, and (2) the reinsurance agreement of October 4, 1934, under which defendant reinsured and assumed the Marzano reinsurance policy as of November 15, 1933. The agreement makes ample provision for the payment of obligations which Peoria would have been required to satisfy had it not gone into receivership. Plaintiff's claim against defendant is such an obligation, and a judgment on the Marzano reinsurance policy, by paragraph 35, is chargeable to the Peoria Life Fund.

The judgment of the Appellate Court is reversed and the judgment of the circuit court of Peoria county is affirmed.

*Judgment of Appellate Court reversed.*
*Judgment of circuit court affirmed.*